## IN RE SITE FOR LIBRARY.
## PETTINGILL THEATRE COMPANY v. CITY OF MINNEAPOLIS.

98 N. W. (2d) 207.

July 24, 1959—Nos. 37,613, 37,629.

*Samuel P. Halpern* and *Joseph L. Abrahamson,* for appellant-relator.

*Charles A. Sawyer,* City Attorney, and *Keith M. Stidd,* Assistant City Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

On December 30, 1955, the city of Minneapolis, through its council, and pursuant to the authority of Minneapolis City Charter and Ordinances (Perm. ed.) c. 10, § 3, adopted a resolution determining that certain lands of relator, The Pettingill Theatre Company, a corporation in Minneapolis, be condemned and appropriated by the city for the site of a municipal library. On April 23, 1957, commissioners appointed by the city council pursuant to the charter awarded relator $44,000 as damages for the taking of its property.

After filing objections to the award, relator appealed to the District Court of Hennepin County under the provisions of Minneapolis City Charter and Ordinances (Perm. ed.) c. 10, § 6. On November 7, 1957, in accordance with this section, the district court confirmed the legality of the prior proceedings and appointed three commissioners to ascertain and report the amount of damages sustained by relator. These commissioners fixed relator's damages at the sum of $54,000. This sum was then set aside by the council in the city treasurer's office for relator. Thereafter, the court directed that the fees of the commissioners appointed by the court be paid by the city and confirmed possession of the property in the city as of May 1, 1958, subject to payment of the $54,000 set aside for relator.

On May 19, 1958, relator moved for an order (1) directing the city to pay the award of $54,000 with interest thereon at 6 percent per annum from April 23, 1957 (date of city-appointed commissioners'

award); (2) directing that relator be reimbursed by the city for the 1956 real estate taxes paid by relator in 1957; and (3) directing payment of relator's costs on appeal.

On May 28, 1958, the court made an order therein (1) that the city pay relator $54,000 awarded with interest thereon at 6 percent per annum from April 23, 1957, until date of payment of the award; (2) that relator be not reimbursed for the 1956 real estate taxes paid by it; and (3) that the costs on appeal, other than the commissioners' fees, be paid by the respective parties incurring them. As a part of said order, the trial court determined that, although relator was entitled to interest from April 23, 1957, the amount due therefor was offset by the value of relator's use, possession, and income from the property from April 23, 1957, to May 1, 1958; and that relator was not entitled to repayment of the 1956 taxes paid during 1957 (1) because of relator's continued use and possession of the premises during that year; and (2) because the award of the city-appointed commissioners on April 23, 1957, was subsequent to the imposition of such taxes.

The present appeal is from the order described. Shortly after the appeal was filed, upon relator's petition, this court, pursuant to M. S. A. c. 606, issued a writ of certiorari to review the proceedings in the event it should be determined that the order described was not appealable.

■ These condemnation proceedings were instituted by the city of Minneapolis under and pursuant to Minneapolis City Charter and Ordinances (Perm. ed.) c. 10. Section 6[1] of this chapter sets forth the procedure and authority governing appeals to the district court from awards made by commissioners appointed by the city council in condemnation proceedings under the charter. It specifies that in such appeals the district court shall appoint three disinterested commissioners to reappraise the damages or benefits to the property taken. By its

---

[1]Minneapolis City Charter and Ordinances (Perm. ed.) c. 10, § 6, provides: "Any person whose property is proposed to be taken * * * under any of the provisions of this Chapter * * * who is dissatisfied with the amount of damages awarded to him * * * shall have the right to appeal * * * to the District Court of the County of Hennepin * * *.

*     *     *     *     *

terms the award of such commissioners is "final unless set aside by the Court for good cause shown" and "no appeal or writ of error shall be allowed from any order of the Court in the premises." Provision is made therein for allowance, by the district court, of reasonable compensation for the commissioners, and for such costs as the court "shall deem just in the premises." There is no charter provision for interest on the award nor for reimbursement for real estate taxes paid by the owner pending the condemnation proceedings.

■ It is the contention of relator that, notwithstanding the charter provisions referred to, it is entitled to interest on the award; reimbursement for real estate taxes paid following the petition for condemnation; and costs incurred in connection with the appeal, all pursuant to the provisions of M. S. A. c. 117. This chapter, which governs condemnation proceedings when municipalities are proceeding thereunder, makes provision for interest, § 117.16;[2] reimbursement for real estate taxes paid after a petition thereunder, § 117.12;[3] and costs on appeal, § 117.14.[4] As originally enacted, it (§ 117.01) provided that:

"In case the amount of damages awarded * * * is complained of by such appellant, the Court shall, if the proceedings shall be confirmed in other respects, * * * appoint three disinterested * * * Commissioners, to reappraise such damage or benefits. * * * The award or assessment of such Commissioners shall be final unless set aside by the Court for good cause shown. * * * but no appeal or writ of error shall be allowed from any order of the Court in the premises. *Said Court shall allow a reasonable compensation to such Commissioners for their services, and make such award of costs on such appeal, including compensation of such Commissioners as it shall deem just in the premises.*" (Italics supplied.)

[2]Section 117.16 provides in part: "All damages allowed under this chapter, whether by the commissioners or upon appeal, shall bear interest from the time of the filing of the commissioners report."

[3]Section 117.12 provides: "All taxes and assessments imposed upon the property after the filing of the petition and paid by the owner before payment of the award shall be added to the amount of such award, and with interest thereon shall be paid therewith; * * *."

[4]Section 117.14 provides: "Such appeal may be noticed for trial as in the case of a civil action, * * *. The cause shall be tried by a jury, unless the parties otherwise agree, * * *. Except as herein otherwise provided, the trial shall be conducted and the cause disposed of according to

"* * * nothing herein shall apply to the condemnation of property by any incorporated place whose charter provides a different mode of exercising the rights of eminent domain by it possessed * * *."

In construing this chapter, this court has held on a number of occasions that its provisions have no application to municipalities acting under their respective charters in condemnation proceedings. See, Rowe v. City of Minneapolis, 135 Minn. 243, 160 N. W. 775; Barmel v. Minneapolis-St. Paul Sanitary Dist. 201 Minn. 622, 277 N. W. 208; In re Widening East Franklin Ave. 240 Minn. 32, 60 N. W. (2d) 23; McRostie v. City of Owatonna, 152 Minn. 63, 188 N. W. 52. As stated in the Rowe case (135 Minn. 246, 160 N. W. 775):

"* * * the general statutes * * * provide that, in proceedings authorized by those sections * * * the city shall be bound absolutely to pay all damages awarded. It is clear that these provisions are applicable only to proceedings taken under the general statutes of the state, and not to proceedings taken under the city charter, and that they do not amend the city charter in any respect. These proceedings being under the city charter, plaintiff's rights are such, and such only, as the terms of the charter confer."

■ Under these decisions it is clear that c. 117 has no application to the issues presented here. However, relator asserts that an amendment to § 117.01 by L. 1955, c. 784, eliminated the provision therein which previously excluded application of c. 117 to municipalities with charters governing eminent domain proceedings and instead provided that its provisions "shall be considered supplementary to those provided by any municipality operating under a Home Rule Charter and shall be available to all such municipalities * * *."

It is contended that under § 117.01 as amended relator is entitled to the additional benefits prescribed in c. 117, even though the present proceedings were instituted under the Minneapolis City Charter. To us it appears that the legislature intended by the amendment to authorize

the rules applicable to ordinary civil actions in the district court. The court in its discretion may award to the prevailing party the costs and disbursements of the appeal."

municipalities with charters governing eminent domain procedure to elect to proceed either under such charters or in the alternative under c. 117. This should not mean that where a city has elected to act under its charter it is nevertheless subject to the terms and conditions of statutes which it elected not to follow.

That c. 117 was not intended to apply in such cases is manifest by the fact that, when the legislature did intend that some provision thereof should be applicable to charter proceedings, it clearly expressed such intent. Thus, in § 117.133 it is provided that:

"In all eminent domain proceedings wherein an appeal is taken to the district court from the award of the commissioners * * * the property owner or the condemnor shall be entitled to a jury trial * * * as a matter of right *notwithstanding the provisions of any charter or ordinance denying such right.*" (Italics supplied.)

Had the legislature intended §§ 117.14, 117.16, and 117.12, or any of them, to likewise apply as relator contends, it could have expressed such intent in the same manner as it did with reference to § 117.133. In the absence of any such expressed intent, we must conclude that § 117.01, as amended, did not change the effect of the decisions above cited. It would follow that whatever rights relator has in these proceedings must be found in Minneapolis City Charter and Ordinances (Perm. ed.) c. 10, under which they were instituted.

■ In construing Minneapolis charter provisions relative to the allowance of interest in condemnation proceedings, this court in Ford Motor Co. v. City of Minneapolis, 143 Minn. 392, 394, 173 N. W. 713, 714, stated the rule as follows:

"* * * If the damages are reassessed on appeal, * * * the landowner is entitled to interest from the date of the original award upon the amount of the damages as finally assessed and determined. Warren v. First Division St. P. & Pac. R. Co. 21 Minn. 424; Whitacre v. St. Paul & S. C. R. Co. 24 Minn. 311; Leber v. Minneapolis & N. W. Ry. Co. 29 Minn. 256, 13 N. W. 31; City of Minneapolis v. Wilkin, 30 Minn. 145, 15 N. W. 668; Commrs. of State Park v. Henry, 38 Minn. 266, 36 N. W. 874; Weide v. City of St. Paul, 62 Minn. 67, 64 N. W. 65."

From the foregoing, it is clear that the court did not err in awarding relator interest on $54,000, the award of the court-appointed commissioners, from April 23, 1957, the date of the award of the commissioners appointed by the city council, to May 1, 1958, the date the city acquired possession, and thereafter until the award was paid.

■ But in Ford Motor Co. v. City of Minneapolis, *supra,* the right to offset such interest by the value of the beneficial use of the property when retained by the owner during the proceedings is also set forth. There it was stated (143 Minn. 394, 173 N. W. 714) that "If the owner makes a beneficial use of the premises subsequent to the filing of the original award, the value of such use may be deducted from the interest allowed." It follows that in the instant case the court was correct in holding that the award of interest from April 23, 1957, should be offset by the value of the use, possession, and income received by relator from the property until its possession was surrendered by relator as of May 1, 1958. Such value, the court determined, exceeded the interest awarded for the period specified. However, there is no evidence in the record to support a finding as to the value of such use, possession, and income. The burden of establishing this rested upon the city. See, Ford Motor Co. v. City of Minneapolis, 147 Minn. 211, 215, 179 N. W. 907, 908, where the court stated that "The taker of property by right of eminent domain * * * has the burden of proving what part of the taken property was actually occupied or used by the former owner * * * and the rental value of the part so occupied or used."

Accordingly, here it must follow that the case should be remanded for the purpose of determining the question of the value of the use, possession, and income of the property during the period possession thereof was retained by relator. See, Ford Motor Co. v. City of Minneapolis, 143 Minn. 392, 173 N. W. 713.

■ As to relator's claim relative to the 1956 real estate taxes paid in 1957 during the pendency of the proceedings, the Minneapolis charter makes no provision for the allowance of an award therefor. In the instant case the real estate taxes involved were those assessed for the year 1956 payable in 1957. They were for benefits accruing for relator's property during 1956, and since the city did not interfere with relator's use, possession, and income of the premises at any time

until May 1, 1958, it is obvious that no inequity could result from the court's refusal to reimburse relator for such taxes.

■ Under Minneapolis City Charter and Ordinances (Perm. ed.) c. 10, § 6, the assessment of costs on appeal is left to the discretion of the trial court. In the instant case, the city was directed to pay the fees of the commissioners appointed by the city council as well as those of the commissioners appointed by the court. It left to the parties the obligation of paying the respective costs which each had incurred in the appeal. We do not feel that such a division of expenditures constituted an abuse of discretion sufficient to require a reversal here. See, State, by Burnquist, v. Miller Home Development, Inc. 243 Minn. 1, 65 N. W. (2d) 900, 50 A. L. R. (2d) 1377.

The order appealed from is affirmed with respect to the court's denial of relator's motion that it be reimbursed for real estate taxes paid during the proceedings, and for costs expended on the appeal. The order is further affirmed as to interest allowed from April 23, 1957, to May 1, 1958, and thereafter to date of payment of the award, to be offset by the value of relator's use, possession, and income of the property up to May 1, 1958, but the case is remanded for further proceedings to determine the value of such use, possession, and income.